[No. 1575.]

## BOB WILSON *v.* THE STATE.

1. CONSTITUTIONAL LAW—TERMS OF COUNTY COURTS.—The amendment of 1883 to the clause of Article 5 of the Constitution, regulating the terms of the County Courts, did not take effect immediately upon receiving a majority of the votes cast at the authorized election, and could not be operative until after the lapse of forty days from the election, when the returns were legally canvassed.

2. SAME.—Section 1 of Article 17 of the Constitution provides: "If it shall appear from said return that a majority of the votes have been cast in favor of any amendment, the said amendment so receiving a majority of the votes cast shall become a part of the Constitution, and proclamation shall be made by the Governor thereof." *Held*, that it is the ascertained majority vote of the people, and not the proclamation of the Governor, which gives operation and force to an amendment receiving such majority vote; and, therefore, the amendment to Article 5 of the present State Constitution, regulating the terms of the County Courts, took effect and became operative when the majority vote in favor thereof was canvassed and ascertained on the fortieth day after the seventh day of August, 1883, the day on which the election was held.

3. SAME.—The amendment to Article 5 of the Constitution provides as follows: "The County Court shall hold at least four terms for both civil and criminal business, annually, as may be provided by the Legislature, or

by the Commissioners' Court of the county under the authority of law, and such other terms each year as may be fixed by the Commissioners' Court," etc. The Commissioners' Court of Smith county, after said amendment was adopted, issued an order providing, that, "besides the regular terms for civil and criminal business on the first Mondays in November, February, May and August of each year, a special term of said Court shall be held for the transaction of criminal business only, on the first Mondays in October, December," etc. The conviction in this case was had at the October term provided for by said order. *Held*, that the purpose of the amendment was to prescribe for each county four annual terms of the County Court for the transaction of both civil and criminal business, and to empower the Commissioners' Court to provide for as many more terms as the public service might demand; that, with respect to the four terms so provided for by the amendment primarily, their limitation to the transaction of both civil and criminal business is absolute, but such limitation does not extend to "such other terms," etc., and it was within the power of the Commissioners' Court to prescribe other than the four regular terms, for the transaction of criminal business only. See the opinion *in extenso* on the question.

4. MISDEMEANOR—CHARGE OF THE COURT.—The trial court is inhibited from giving a verbal charge in any case except in misdemeanors, and then only by the consent of the parties. In this case, which was a misdemeanor, the court gave no written charge, but read certain articles of the Penal Code to the jury by way of charge; to which the defendant excepted. *Held*, that such was a verbal charge, and being excepted to, was fatal error. WHITE, Presiding Justice, dissents from this ruling.

5. AGGRAVATED ASSAULT AND BATTERY—DEADLY WEAPON.—The information charged the offense to have been committed with a pole, alleged to be a deadly weapon, and the proof showed it to be "a blackjack fence pole used as a rail." *Held*, that whether or not the weapon was in fact a deadly one is a matter of proof, and depends in some cases upon its use or the manner of its use, and, therefore, this conviction cannot stand, because there is no proof of the deadly character of the weapon.

6. INFORMATION filed on the thirty-first day of August, 1883, which alleges the offense to have been committed "heretofore on the thirty-first day of August, 1883," sufficiently charges that the offense was committed before the information was filed.

APPEAL from the County Court of Smith. Tried below before the Hon. C. G. White, County Judge.

The information charged the appellant with an aggravated assault and battery upon Zack Lincoln. A fine of twenty-five dollars was imposed by a verdict of guilty.

The transcript recites the following agreed statement of facts: "Be it remembered that on the trial of the above case, the evidence given by the witnesses for State and defendant was contradictory, but taking the State's testimony as true, there was

sufficient evidence to support the conviction, unless in regard to the following particulars, which are stated. The testimony was that the pole used was a blackjack fence pole, used as a rail, but there was no evidence as to whether it was or was not a deadly weapon, except as first stated. The testimony of Jane Wilson was that Zack Lincoln got off his horse and drew his knife as Bob Wilson came down toward the bars, and got between Bob and the bars, and advanced on Bob with the knife, and said: "G—d d—n you, I am going to kill you right here." That Bob then turned around, and as he did so Zack Lincoln made a lick at him with his drawn knife, and made at him, and Bob ran to the fence and picked up a pole, and, as he turned, Zack rushed under him, sorter, and cut him under the arm with the knife. Abe Morton and Zack Lincoln contradicted this statement. We agree that the above is a true and correct statement of the facts proven on the above trial."

The motion for new trial and in arrest of judgment raised the questions involved in the opinion.

*Chilton, Robertson & Finlay,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction was had at a special term of the County Court of Smith county, held for the trial of criminal cases, on the first Monday in October, 1883. This special term of said court was held under authority of an order of the Commissioners' Court of said county, passed after the adoption of the amendment to Article V. of the Constitution, which provides as follows: "The County Court shall hold at least four terms for both civil and criminal business annually, as may be provided by the Legislature, or by the Commissioners' Court of the county, under the authority of law, and such other terms each year as may be fixed by the Commissioners' Court," etc. (Acts 18 Leg., p. 134.) It was provided in the order of the Commissioners' Court referred to that, "besides the regular terms for civil and criminal business, on the first Mondays in November, February, May and August of each year, a special term of said court shall be held, for the transaction of criminal business only, on the first Mondays in October, December," etc.

It does not appear from the record in this case when this order of the Commissioners' Court was enacted, but we infer from the

language of the order that it was made after the adoption of the amendment, but prior to the proclamation of the Governor, declaring the result of the election. If such be the case, the amendment was in force, unless it required the proclamation of the Governor to make it effective. In *Sewell* v. *The State*, decided by this court at its present term (*ante*, 56), it was held that the result of the election upon the amendments to the Constitution was ascertained on the fortieth day after the seventh day of August, 1883, the day on which the election was held, but the question as to when said amendments became operative was not determined.

Section 1, of Article XVII, of the Constitution, provides: "If it shall appear from said return that a majority of the votes cast have been cast in favor of any amendment, the said amendment so receiving a majority of the votes cast shall become a part of this Constitution, and proclamation shall be made by the Governor thereof." Our construction of this provision is that it is the ascertained majority of the vote of the people, and not the proclamation of the Governor, which gives force and effect to amendment. If the Governor were to neglect or refuse to issue such proclamation, the amendment would, nevertheless, be a part of the Constitution of the State, because it is the will of the people, expressed in the mode prescribed by their organic law. It certainly never was intended that it should be within the power of the Governor thus to defeat the solemnly declared will of the people. We are of the opinion, therefore, that as soon as the election returns were canvassed, and it was ascertained that a majority of the votes cast were in favor of the amendment, it became a part of the Constitution, and was in full force and effect from that date.

In this case it is contended by appellant's counsel that the Commissioners' Court had no authority under the amendment, to provide for terms of the County Court for the transaction of criminal business *only;* but could only provide, if at all, for terms for the transaction of *both* civil and criminal business. We do not so understand and construe either the language or the intent of the amendment. We think the four terms annually, that are required by the amendment, must be for both civil and criminal business, and it would be beyond the power of the Commissioners' Court to provide otherwise with reference to at least four terms annually of the County Court. But this limitation of power upon the Commissioners' Court extends no further,

and it is expressly provided that said court may provide *other terms* of the County Court; not other terms for both civil and criminal business, but generally other terms, thus conferring specifically and fully, upon the Commissioners' Court, the power to fix and regulate all other terms of the County Court, except the four terms annually for both civil and criminal business.

This view, we think, is borne out by the explicit language of the amendment, and is also in accord with its intent. It is the purpose of the amendment to lessen the number of the terms of the County Court, and to place it within the power of each county to have no more terms of that court, and such terms only, as the public interests may require, provided that there shall be held not less than four terms annually for both civil and criminal business. Some counties would not require more than these four terms, while in others it might be necessary to have many more. In some counties the four terms would be sufficient for the transaction of all the civil business, while they would be wholly inadequate for the transaction of the criminal business, and *vice versa.* It required this amendment to effect this change as to the terms of the County Court, because it was provided in the Constitution that "The County Court shall hold a term for civil business at least once in every two months, * * and a term for criminal business once in every month." (Const. Art. V., Sec. 17.) As we construe the amendment, the Commissioners' Court has the power and authority to provide for such terms of the County Court, either for civil or criminal business, or for both together, as may be considered necessary for interest of their county, subject only to the superior authority of the Legislature over the subject.

We hold, therefore, that appellant was convicted at a legal term of the County Court of Smith county.

It appears from a bill of exception in the record that the trial judge, in charging the jury, gave no written instructions, but certain special charges which had been requested for defendant, but proceeded to read to the jury as a charge certain articles of the Penal Code which he had considered applicable to the case. Defendant excepted to this mode of charging the jury, and demanded a written charge, and saved his exception by bill.

It is provided expressly, that "No verbal charge shall be given in any case whatever, except in cases of misdemeanor, and then only by consent of the parties." (Code Crim. Proc., Art. 682.) Reading law to the jury is a verbal and not a written charge. If

this mode of charging is not excepted to at the time, it would not, in a misdemeanor case, be cause for reversal. ·(*Vanwey* v. *The State*, 41 ·Texas, 639; *Franklin* v. *The State*, 2 Texas Ct. App., 8; *Lawrence* v. *The State*, 7 Texas Ct. App., 192; *Hobbs* v. *The State*, 7 Texas Ct. App., 117.) But, if the error was excepted to at the time, as was done in this case, the law is preemptory that the judgment shall be reversed. (Code Crim. Proc , Art. 685; *Melton* v. *The State*, 12 Texas Ct. App., 488.)

A deadly weapon is one likely to produce death or great bodily harm. This conviction was for an aggravated assault and battery committed with a pole alleged to·be a deadly weapon. It is shown by the evidence that the pole was a blackjack fence pole, used as a rail, but there is no proof as to its size, weight, strength, or other character showing it to be deadly, nor as to the effect, if any, produced by the use of it in this instance. It was essential for the State to show by evidence that it was a deadly weapon. A blackjack fence pole, although used for a rail, is not necessarily a deadly weapon. It might have been so large, heavy and unwieldy as to be harmless in the hands of a man, or it might have been so small or so rotten as to be not at all dangerous. As to whether or not the weapon is, in fact, a deadly one, is a matter of proof, and depends in some cases upon the manner of its use or attempted use. (*Hunt* v. *The State*, 6 Texas Ct. App., 663.) As shown by the statement of facts in this case, there was no evidence as to the deadly character of the pole with which the assault and battery was alleged to have been committed, and in this particular the conviction is not sustained by the evidence.

We do not think the objection made to the information is tenable. It was filed on the thirty-first day of August, 1883, and alleges that *heretofore*, on the thirty-first day of August, 1883, the offense was committed. ·This was a sufficient allegation that the offense was committed anterior to the presentment of the information. In the case of *Williams* v. *The State*, 12 Texas Court of Appeals, 226, the offense was alleged to have been committed on the same day that the information was presented, without any allegation that the offense was anterior to the information. We think the word *heretofore*, as used in the information in this case, is equivalent to a direct allegation that the offense was committed anterior to the time of presenting the information.

Because the court erred in giving a verbal charge to the jury,

and because it was not proved that the weapon with which the offense was committed was a deadly one, the judgment is reversed and the cause remanded.

WHITE, PRESIDING JUDGE. I concur in the reversal of the case, but dissent from the opinion in regard to the power of the court in misdemeanor cases to read from the statute the law defining and punishing the offense. I am of opinion that such a power is inherent in the court, and that the requirement that "*the charge*" should be in writing was never intended to embrace this matter. For, whether in writing or not, a bill of exceptions showing that the court read such and such an article of the case, without writing out the article, would sufficiently enable this court to say whether the article read .was applicable or not to the case tried. And therefore there is no reason why the rule should apply in such a matter.

*Reversed and remanded.*